UNITED STATES of America,
Appellee,

v.

Richard HUSS and Jeffrey
Smilow, Appellants.

No. 1248, Docket 75–1192.

United States Court of Appeals,
Second Circuit.

Argued June 17, 1975.

Decided July 25, 1975.

Paul J. Curran, U. S. Atty. for the Southern District of New York, Jerry L. Siegel and Steven J. Glassman, Asst. U. S. Attys., New York City, on the brief, for appellee, United States of America.

Nathan Lewin, Miller, Cassidy, Larroca & Lewin, Washington, D. C., Dennis Rapps, Brooklyn, N. Y., on the brief, for appellants Richard Huss and Jeffrey Smilow.

Before GIBBONS,* GURFEIN and MESKILL, Circuit Judges.

GIBBONS, Circuit Judge:

The defendants, Richard Huss and Jeffrey Smilow, appeal from an order dated May 5, 1975 denying their application for an order directing the Federal Bureau of Prisons to provide them with meals meeting the Orthodox Jewish kosher dietary laws during their incarceration pursuant to a judgment of sentence. The application was made to the sentencing judge in the district court by a written motion in the above-entitled criminal case. The district court, without considering whether here was a jurisdictional predicate for doing so, held an evidentiary hearing and rejected the defend-

* United States Circuit Judge for the Third Circuit, sitting by designation.

ants' claims on the merits. Because we find that the district court lacked jurisdiction over the subject matter of the application, or personal jurisdiction over an appropriate civil respondent, we vacate the order appealed from without prejudice to its renewal in an appropriate forum.

## I  The Procedural Posture

Following the January 26, 1972 fire bombing of the Manhattan offices of Columbia Artists Management, Inc. and Hurok Concerts, Inc. three persons were indicted for violation of 18 U.S.C. §§ 844(i) and 2. Defendant Jeffrey Smilow, who was then a 17-year old high school student, was directed to testify before the grand jury in June, 1972 under a grant of use immunity made pursuant to 18 U.S.C. § 6002. Smilow refused to testify despite a district court order on the ground that the Jewish religion prohibited him from being an informer. He was held in civil contempt pursuant to 28 U.S.C. § 1826(a) and that judgment was affirmed by this court on July 20, 1972.[1] On October 24, 1972 that judgment was vacated by the Supreme Court because of certain representations made by the Solicitor General with respect to warrantless wiretap interceptions.[2] This court then remanded for a hearing to determine whether or not Smilow had been overheard in any wiretaps and whether questions asked before the grand jury were the fruits of the alleged illegal government activity.[3] On remand the government dismissed the original civil contempt proceeding.

In June 1973 Huss and Smilow were called as witnesses to testify at the trial of those charged with the fire bombings. Both relied upon their religious scruples in refusing to testify despite grants of use immunity. They were adjudged in civil contempt, and that judgment was affirmed by this court.[4] Despite that holding, which resulted in their short-term commitment to the Federal Detention Center in New York City, they continued to refuse to testify. Thereafter, they were charged with criminal contempt, 18 U.S.C. § 401 and were found guilty in a jury trial on July 16, 1974. On July 31, 1974 they were sentenced to imprisonment for one year. After a brief incarceration they remained free on bail pending appeal. On November 27, 1974 their convictions were affirmed by this court without opinion. Its mandate was issued on February 21, 1975.

By an arrangement with the United States Attorney to which the court, so far as appears of record, was not a party, Huss and Smilow were scheduled to surrender to commence the service of their sentences on March 10, 1975. (Tr. March 6, 1975, at 9.) See 18 U.S.C. § 3568. On March 6, 1975 their attorney appeared before the district court in the presence of an Assistant United States Attorney and presented an informal application[5] for an order that Huss and Smilow be permitted to have kosher food during the period of their incarceration, or alternatively that their surrender be postponed until after Passover, which was scheduled to begin on March 20th. The court directed that they surrender on April 4, 1975, following the completion of Passover and indicated that if between March 6, 1975 and April 4, 1975 the defendants wanted to come before the court with a written application with respect to kosher food during their confinement it would be considered. (Tr. March 6, 1975, at 20.)

On Wednesday, March 27, 1975 the defendants filed a motion returnable on

---

1. *Smilow v. United States,* 465 F.2d 802 (2d Cir. 1972).

2. *Smilow v. United States,* 409 U.S. 944, 93 S.Ct. 268, 34 L.Ed.2d 215 (1972).

3. *United States v. Smilow,* 472 F.2d 1193 (2d Cir. 1973).

4. *United States v. Huss,* 482 F.2d 38 (2d Cir. 1973).

5. The record discloses that this informal application was arranged following, and apparently as a result of, telephone calls to the court and the United States Attorney from the Congressman for the Congressional district in which Huss and Smilow reside. (Tr. March 6, 1975, at 3–4, 8–10).

Tuesday, April 1st, which resulted in the order appealed from. Neither the moving papers nor the memorandum of law filed in support of the motion made any reference to the jurisdiction of the district court to consider the application. On April 1, 1975 the court heard the testimony of three witnesses; however, other pressing matters on its docket necessitated a continuance until April 16, 1975. Meanwhile, on April 4th, Huss and Smilow surrendered to commence serving their sentences and were temporarily placed in the Federal Detention Center in Manhattan. While they were confined there, the court took testimony on three more days during April, 1975 to complete the hearing.

On May 5, 1975 the district court filed an opinion and order denying defendants' applications. The court rejected Huss' application on the ground that he was not, in fact, a strict observer of the kosher dietary laws. As to Smilow's application, the court held that neither the first nor the eighth amendment required the Bureau of Prisons to go beyond its official policy of "limited accommodation" with religious dietary laws.

The court's opinion makes no reference to the source of its jurisdiction to entertain the applications. On March 6, 1975, it will be recalled, the court agreed to postpone the defendants' surrender date until April 4, 1975, the day after the completion of Passover. Thus, on March 27, 1975 when the moving papers were filed below, the defendants were free on bail. When the order appealed from was entered on May 12, 1975, the defendants were still in custody at the Federal Detention Center in Manhattan. However, on May 22, 1975, they were transferred to the Federal Youth Correctional Facility at Ashland, Kentucky where they are currently incarcerated.

Just two days after the district court denied defendants' applications, Judge Weinstein of the Eastern District of New York, in a similar case, came to an opposite conclusion on its merits.[6] The next day, counsel for Smilow requested a temporary interim order for the provision of kosher food. Judge Griesa denied the motion.[7] (App. at 543a). At the same time the government orally moved to have the district court amend or modify its May 5th opinion. In papers filed on May 9, 1975, the government made a motion, returnable on May 12th,

> "for an order pursuant to Rule 59(a) and (e) of the Federal Rules of Civil Procedure amending, or modifying the opinion in this case, or granting a new trial, in order that upon reconsideration of its opinion, the court may make such additional findings of fact and conclusions of law as it deems necessary." (App. at 565a).

The government's memorandum in support of this motion suggests that the district court's May 5, 1975 opinion does not sufficiently articulate the proper burden of persuasion or scope of review. On May 14, 1975 the district court filed a supplemental opinion in which it adhered to its May 5, 1975 holdings. However, neither the government's May 9, 1975 memorandum nor the court's supplemental opinion mention the source of the district court's jurisdiction. And while the government's motion refers to Rule 59(a) and (e) of the Federal Rules of Civil Procedure, both it and the court's supplemental opinion are captioned in the respective criminal cases of *"United States v. Smilow,* 73 Cr.Misc. 24," and *"United States v. Huss,* 73 Cr.Misc. 25." Presumably, however, the government at one point considered the defendants' application as civil in nature rather than as

---

6. *United States v. Kahane,* 396 F.Supp. 687 (E.D.N.Y., 1975).

7. Following Judge Griesa's refusal on May 8, 1975 to grant Smilow's request for interim relief pending appeal, a motion was made before this court for such an order. On May 20, 1975, a panel of this court denied the motion.

A motion for an injunction pending appeal was then submitted on May 22, 1975, to the Supreme Court. It was denied by the full Court on June 2, 1975. *Smilow v. United States,* 421 U.S. 997, 95 S.Ct. 2393, 44 L.Ed.2d 664 (1975).

a part of the criminal proceedings since their May 9th motion, quoted above, was made pursuant to the civil rules of procedure.

## II   The Suggested Bases of Jurisdiction

As mentioned earlier, an application made to this court for injunctive relief pending appeal, Rule 8, Fed.R.App.P., was denied.[8]   In connection with that application, the defendants and the United States Attorney were asked to brief the question of district court jurisdiction. Thus we have had the benefit of briefing and argument on several alternative bases for that jurisdiction urged by the defendants and discussed by the government.   Mindful of the statutory provision that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts", 28 U.S.C. § 1653, we have considered each of the suggested bases of jurisdiction urged upon us with a generous eye and have found all lacking.

### (A)   Inherent Power to Control Place or Conditions of Confinement

■ Defendants urge that a sentencing court has the inherent power to control the place and conditions of confinement.   If such inherent power existed, it would have been exercised when the district court originally imposed sentence, some eight months before the filing of the instant application.   Such supposed authority would have been employed well before this court reviewed any judgment of sentence.   However, the statutory scheme which forms the basis of federal sentencing and confinement authority permits a trial judge no such power.

■ A federal sentence of imprisonment commences running when the defendant is received in the custody of the agents of the Attorney General.   18 U.S.C. § 3568.   The limit of the court's custodial sentencing power is to commit the defendant "to the custody of the Attorney General of the United States,

who shall designate the place of confinement where the sentence shall be served." 18 U.S.C. § 4082(a).   A provision in a federal judgment of sentence that it be served concurrently with a state sentence already being served, for example, is surplusage which the Attorney General may disregard.   *E. g., Hash v. Henderson,* 385 F.2d 475, 477–78 (8th Cir. 1967) and cases cited therein.   *A fortiori,* the claim of inherent authority to impose conditions of confinement as a part of the sentencing process must fail. This does not mean that the Attorney General has unfettered discretion with respect to conditions of confinement. However, except where specific statutory authority exists,[9] the place and conditions of confinement are in the first instance, matters of executive rather than judicial branch authority.

### (B)   Rule 35, Fed.R.Crim.P.

■ The district court under Rule 35, Fed.R.Crim.P., has the power to correct an illegal sentence at any time, and to reduce a sentence within 120 days of the issuance of a mandate on affirmance. Simultaneously with the filing of the instant motion, defendants did present a Rule 35 motion for reduction of sentence.   The court denied such relief and that action is not before us on this appeal.   An illegal sentence for purposes of Rule 35 is one in excess of a statutory provision or otherwise contrary to the applicable statute.   *See* 2 C. Wright & A. Miller, Federal Practice and Procedure § 581, at 552–53 (1969).   The Rule does not even afford a means for correcting the failure of the district court to comply with Rule 32, Fed.R.Crim.P. in imposing sentence.

> "[A]s the Rule's language and history make clear, the narrow function of Rule 35 is to permit correction at anytime of an illegal *sentence,* not to reexamine errors occurring at the trial or other proceedings prior to the impo-

---

**8.**   See note 7 *supra,* and accompanying text.

**9.**   *E. g.,* 18 U.S.C. §§ 4252, 4253 (addicts); 18 U.S.C. § 5010 (youth offenders).

sition of sentence." *Hill v. United States,* 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962) (emphasis in original) (footnote omitted).

It does not afford a jurisdictional predicate for the control of the manner of execution of sentence, such as credit for time served. *See Lee v. United States,* 400 F.2d 185, 188 (9th Cir. 1968). The judgment of sentence in this case was not illegal. It remanded the defendants to the custody of the Attorney General for a period within the statutory maximum, and it imposed no conditions. The illegality which the defendants allege is not in the sentence, but in the manner in which the Attorney General, to whose custody that judgment remits them, operates the prisons in his charge. Rule 35 adds nothing of substance to the sentencing court's sentencing power.

### (C) 28 U.S.C. § 2255

▆▆▆ Appellants contend that their application should be treated as a motion pursuant to 28 U.S.C. § 2255 to correct or vacate a sentence that was imposed by the district court. There is a threshold difficulty with reliance on this section. A § 2255 proceeding, like a petition for *habeas corpus,* is not a proceeding in the original criminal prosecution, but an independent civil suit. *Heflin v. United States,* 358 U.S. 415, 418 n.7, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959). Since it is an independent civil action, the clerk of the district court must collect a docket fee. *See Martin v. United States,* 273 F.2d 775 (10th Cir. 1960). None was collected here, and we have not been advised of any *in forma pauperis* determination. Moreover, this proceeding has throughout been treated by Huss and Smilow as a part of the original criminal prosecution. There is no reason why for these litigants, well-represented by prominent counsel, we should disregard the form of pleading they have chosen

10. Act of Feb. 5, 1867, ch. 28, 14 Stat. 385, now incorporated in 28 U.S.C. § 2241.

11. In *United States v. Kahane, supra,* note 6, Judge Weinstein suggests 28 U.S.C. § 2255 as

and construe as a civil proceeding what they have denominated as criminal.

▆▆▆ But there is a more fundamental objection to predicating district court jurisdiction upon § 2255. That statute, enacted as a part of the 1948 revision to Judicial Code, which also dealt with the basic *habeas corpus* statute, was intended to provide a statutory remedy for collateral attack on judgments of sentence following conviction. In *United States v. Hayman,* 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952), the Supreme Court reviewed the intended purpose of the 1948 reform. It pointed out that under the Habeas Corpus Act of 1867,[10] *habeas corpus* applications collaterally attacking federal convictions had to be brought at the place of confinement. This concentrated such litigation in those districts where federal prisons were located, remote from records and witnesses, which were accessible at the sentencing court. *Id.* at 212–14, 72 S.Ct. 263. The § 2255 remedy was designed to meet the collateral attack problem, but *not* to transfer to the sentencing court the entire *habeas corpus* jurisdiction of the 1867 Act. Indeed, if we were to construe the 1948 revision as transferring to the sentencing court not only collateral attack litigation, but also litigation over conditions of confinement, we would be creating in reverse, the same kinds of administrative difficulties which § 2255 was designed to avoid. Certainly § 2241 *habeas corpus* is available to challenge a condition of custody which is "in violation of the Constitution or laws . . . of the United States . . . ." 28 U.S.C. § 2241(c)(3). But if by virtue of § 2255, such relief is also available before the sentencing court, remote from the usual places of confinement, that court will in most cases be confronted with the same kinds of logistical problems faced by district courts prior to 1948 in the district of confinement in collateral attack cases.[11] We do

an alternative basis of jurisdiction in the sentencing court on the ground that effective judicial administration supports this conclusion.

More recently, Judge Platt, sitting in the Eastern District of New York, without discuss-

not believe that Congress, in enacting the federal collateral attack remedy, intended to transfer to the sentencing court, matters of internal prison administration reviewable under the provisions of the general *habeas corpus* statute, the *mandamus* statute,[12] or the Administrative Procedure Act and 28 U.S.C. § 1331.

▮▮▮ We are reenforced in that construction by *Costner v. United States,* 180 F.2d 892 (4th Cir. 1950). That case held that § 2255 is not available to challenge federal prison authorities' calculations of good time credit. Chief Judge Parker, the chairman of the Judicial Conference Committee which drafted § 2255, was a member of the panel which decided *Costner.* Cases holding that a § 2255 motion is not available to challenge parole board decisions, though not directly controlling, are closely analogous. *See, e. g., Stinson v. United States,* 342 F.2d 507 (8th Cir. 1965); *Allen v. United States,* 327 F.2d 58 (5th Cir. 1964); *United States v. Hock,* 275 F.2d 726 (3d Cir. 1960). Thus we agree with the interpretation of the statute announced in the District of Columbia Circuit:

> "Although a motion under Section 2255 may be utilized to attack a sentence which is 'in excess of the maximum authorized by law,' this refers only to the sentence as *imposed,* as distinct from the sentence as it is being *executed.* If appellant's sentence is being executed in a manner contrary to law . . . he may seek *habeas corpus* in the district of his confinement. Section 2255 is not broad enough to reach matters dealing with the execution of sentence. . . ." *Freeman v. United States,* 103 U.S. App.D.C. 15, 254 F.2d 352, 353–54

(1958) (emphasis in original) (footnote omitted).

*See also Mordecai v. United States,* 137 U.S.App.D.C. 198, 421 F.2d 1133, 1139–40 (1969). Since the defendants in this proceeding do not challenge the admittedly lawful sentence, § 2255 affords no basis for the district court adjudication.

**(D) 28 U.S.C. § 1361**

Pursuant to the *mandamus* statute enacted in 1962, district courts have "original jurisdiction of any action in the nature of *mandamus* to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."[13] Enactment of the *mandamus* statute also necessitated suitable provision for the laying of venue. This was accomplished by way of amendment of the venue statute, 28 U.S.C. § 1391.[14] The amendment provides that a *mandamus* action may

> "be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved." 28 U.S.C. § 1391(e).

This same section also provides for the extraterritorial service of the summons and complaint. It has been held that § 1361 affords a district court with proper venue the jurisdiction to consider a claim that actions of federal prison officials violate first amendment rights. *E. g., Barnett v. Rodgers,* 133 U.S.App.D.C. 296, 410 F.2d 995 (1969); *Long v. Parker,* 390 F.2d 816, 819 (3d Cir. 1968), *vacated and remanded on other grounds,* 384 U.S. 32, 86 S.Ct. 1285, 16 L.Ed.2d 333 (1969). But there are insurmountable difficulties with an attempt to justify

---

ing the jurisdictional predicate for his actions, denied a motion made following a stay of sentence for the provision of kosher food for a convicted federal defendant to be incarcerated at Ashland, Kentucky. *United States v. Shlian,* 396 F.Supp. 1204 (E.D.N.Y., 1975).

**12.** 28 U.S.C. § 1361. See discussion in subsection "D" of opinion, *infra.*

**13.** Act of Oct. 5, 1962, Pub.L. No. 87–748, § 1(a), 76 Stat. 744, 28 U.S.C. § 1361.

**14.** Act of Oct. 5, 1962, Pub.L. No. 87–748, § 2, 76 Stat. 744, 28 U.S.C. § 1391(e).

adjudication of the issues presented *sub judice* as if they were presented in a complaint seeking mandamus relief.

■ In the first place, the application below was not filed as a civil action, no docketing fee was paid, no summons or complaint was filed or served, and no federal respondent was named or served. Secondly, neither the two-page motion nor the testimony indicates facts which would establish venue in the Southern District of New York. Certainly on this barren record, we cannot hold that any appropriate federal mandamus respondent resides in the Southern District of New York. Nor can we undertake to litigate a mandamus action against unknown federal respondents, who, for all we know, if confronted with the kosher food issue in the context of the situation at the Youth Correctional Facility in Ashland, Kentucky, would work out an accommodation which would make the claim moot. There are, after all, orderly processes designed to assure that civil litigation will go forward in a genuinely adversarial context, and 28 U.S.C. § 1653 which permits amendment of pleadings to show jurisdiction, does not permit us to disregard those processes entirely. There was no mandamus respondent before the district court which would give that court jurisdiction over a genuine § 1361 lawsuit.[15] Significantly, appellants did not rely on § 1361 in that part of their brief discussing jurisdiction.

### (E) 28 U.S.C. § 2241

When the March 27, 1975 application was made, the defendants were free on bond but under sentence in the Southern District of New York. The conditions of the bond do not appear in the record before us, but we may assume that some minimum degree of custody was involved. In any event, by the time the district court handed down its May 5, 1975 decision, the defendants had actually surrendered and were lodged in the Federal Detention Center on West Street in Manhattan. Thus, the warden of that facility was an appropriate habeas corpus respondent. Moreover, since the Southern District of New York was the district of confinement, the district court would have jurisdiction to issue a writ of *habeas corpus* pursuant to § 2241. *See Ahrens v. Clark,* 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948); *Braden v. Judicial Circuit Court,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). Whether defendants' presence in the Southern District of New York would also afford habeas corpus jurisdiction to litigate the future conditions of their confinement in Ashland, Kentucky need not concern us, since if habeas corpus jurisdiction existed by virtue of the West Street custody, the legal principles established in the New York case would undoubtedly bind the federal government in Kentucky. *Cf. United States ex rel. Meadows v. New York,* 426 F.2d 1176 (2d Cir. 1970).

■ But here again the stumbling block is that the defendants, represented by counsel, did not choose to file a petition for habeas corpus. There is no pleading in the record before us except a motion in the criminal proceeding. At oral argument on this appeal, the court, in an effort to find a basis for district court jurisdiction, pointed out that Warden Louis J. Gengler, the actual custodian at the West Street Detention Center had testified in the proceedings below. We requested the Assistant United States Attorney arguing the appeal to consult with the Bureau of Prisons and the Department of Justice and inquire whether the United States Attorney for the Southern District court could waive service of appropriate civil process and treat the case as if Warden Gengler or some other appropriate § 2241 respondent had been before the district court. We have been informed by letter that the United States Attorney is not authorized to make any jurisdictional conces-

---

**15.** We note that Judge Weinstein's opinion in *United States v. Kahane, supra,* note 6, has a dual civil and criminal caption. Of course, we express no view as to the propriety of civil mandamus jurisdiction in that case.

sions. Thus for the same reason why § 1361 jurisdiction is unavailable—lack of an appropriate civil respondent—we must hold that § 2241 does not lend jurisdictional support to the district court's adjudication.[16]

### (F) Other Authorities Relied on by Appellants

Appellants point to a number of cases in which federal district courts have undertaken to litigate challenges to conditions of confinement on constitutional grounds. However, in each of the cases cited, there was unquestioned district court jurisdiction absent here. We set to one side, as entirely irrelevant to the jurisdictional issues in this case, those instances in which actions of state prison officials have been challenged in suits brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and for which jurisdiction lies under § 28 U.S.C. § 1343(3). *E. g., Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Ross v. Blackledge,* 477 F.2d 616 (4th Cir. 1973); *Wilson v. Prasse,* 463 F.2d 109 (3d Cir. 1972); *Gittlemacker v. Prasse,* 428 F.2d 1 (3d Cir. 1970); *Abernathy v. Cunningham,* 393 F.2d 775 (4th Cir. 1968); *Pierce v. La Vallee,* 293 F.2d 233 (2d Cir. 1961). Here, unlike the cases cited above, no action "under color of" state law is alleged.

Reference to leading federal prisoner cases is also inapposite. In *Barnett v. Rodgers, supra,* the district court treated the action as an alternative application for *habeas corpus* or *mandamus,* for either of which, an appropriate respondent was before the court. In *Long v. Parker, supra,* a mandamus case was brought against an appropriate respon-

dent, and in *Walker v. Blackwell,* 360 F.2d 66 (5th Cir. 1966), another mandamus case was instituted against a proper respondent. None of these federal prisoner cases lend support to the appellants' jurisdictional contentions in this case, where there was no appropriate respondent for purposes of either *habeas corpus* or *mandamus* before the district court. Rather, for these defendants, represented by able counsel, there are appropriate remedies which they have thus far chosen to disregard.

### III Conclusion

The district court lacked jurisdiction to adjudicate either the sincerity of appellant Huss' religious commitments, or the constitutionality of the Federal Bureau of Prisons' accommodation with the religious dietary practices of appellant Smilow, an Orthodox Jew. The order appealed from will be vacated, and the district court will be directed to enter an order dismissing the defendant's motion without prejudice to any subsequent litigation of the tendered issues in appropriate proceedings in a court having subject matter jurisdiction over the claim and personal jurisdiction over the proper parties.

MESKILL, Circuit Judge (concurring):

I agree with the majority that the district court lacked jurisdiction to adjudicate the claims of Huss and Smilow. I take issue with and disassociate myself from the sentiments expressed in the majority opinion at footnote 16. I am *not* "disturbed" that the Bureau of Prisons and the Justice Department felt it unwise to cure a jurisdictional defect caused by the defendants.

As the majority points out, Majority Opinion at 606, "[F]or these defendants, represented by able counsel, there are appropriate remedies which they have

---

**16.** In view of the fact that Warden Gengler, an appropriate § 2241 respondent, actually testified in the proceedings, and that the case was fully litigated and briefed on the merits in the district court and on appeal, we are disturbed

that in the interest of justice the United States Attorney could not have been authorized to waive the personal jurisdiction defect. That, however, is not a matter within our control.

thus far chosen to disregard." Representatives of the government should strive at all times to see that justice is done. That is what government is all about. Justice does not require, however, that the government waive service of process upon a proper respondent in order to turn a motion in a criminal case into a civil mandamus or habeas corpus proceeding. Justice certainly does not require that the government, in an adversary proceeding, cooperate with an adverse party to place a particular issue before a particular court at a particular time.