**Kenechukwu NWANKWO, Petitioner,**

v.

**Janet RENO, Attorney General of the United States of America, and Nancy J. Hooks, Officer-in-Charge of the Immigration and Naturalization Service, Oakdale, Louisiana, Respondents.**

**Egebetayo PETERS, Petitioner,**

v.

**Janet RENO, Attorney General of the United States of America, and Nancy J. Hooks, Officer-in-Charge of the Immigration and Naturalization Service, Oakdale, Louisiana, Respondents.**

**Stanley UMAH, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Nos. 93 CV 959, 93 CV 1126 and 92 CV 3211.**

United States District Court, E.D. New York.

March 30, 1993.

---

Kenechukwu Nwankwo, pro se.

Egebetayo Peters, pro se.

Stanley Umah, pro se.

Mary Jo White, U.S. Atty. by John Curran, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY, for defendant in No. 92 CV 3211.

Mary Jo White, U.S. Atty. by Joseph Conway, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY, for respondents in No. 93 CV 1126.

Mary Jo White, U.S. Atty. by Geoffrey Mearns, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY, for respondents in No. 93 CV 959.

## CORRECTED MEMORANDUM & ORDER

KORMAN, District Judge.

*United States v. Restrepo,* 802 F.Supp. 781 (E.D.N.Y.1992), discusses at length the harsh and disparate treatment that deportable aliens, who are convicted of crimes, suffer because of the policies of the Bureau of Prisons and the Immigration and Naturalization Service. One of the more disturbing aspects of this treatment is the continued incarceration of the alien, even after he has served in full the sentence imposed upon him, because of the failure of the Attorney General to effect in a timely manner the alien's deportation from the United States.

Title 8 U.S.C. § 1252(c) provides that "the Attorney General shall have a period of six months" from the date of a final order of

deportation "within which to effect the alien's departure from the United States, during which period, at the Attorney General's discretion, the alien may be detained [or] released on bond ..." Section 1252(c), however, provides a remedy for the failure of the Attorney General to proceed with reasonable dispatch in effectuating an alien's departure from the United States:

> Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention ... during such six-month period upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to effect such alien's departure from the United States within such six-month period.

In 1990 Congress amended 8 U.S.C. § 1252 to deny the Attorney General the discretion to release aliens who have been convicted of aggravated felonies and who were not lawfully admitted into the United States, "notwithstanding" the provisions of subsection (c), which confers such discretion on the Attorney General. 8 U.S.C. § 1252(a)(2)(A). Because the habeas corpus proceedings to which reference is made in § 1252(c) contemplate review or revision of "any determination of the Attorney General concerning detention," it is arguable whether it applies to a case in which the Attorney General does not have the discretion to release an alien.

■ Of the three aliens involved in these consolidated cases, Kenechukwu Nwankwo and Stanley Umah are permanent resident aliens who were "lawfully admitted" to the United States. Pursuant to 8 U.S.C. § 1252(a)(2)(B), the Attorney General retains the discretion to release them. Under these circumstances, the "determination of the Attorney General concerning their detention" may be reviewed upon a showing that "the Attorney General is not proceeding with such reasonable dispatch as may be warranted" to effect their deportation. 8 U.S.C. § 1252(c). While Egebetayo Peters was arrested before he could be "lawfully admitted" into the United States, relief pursuant to 28 U.S.C. § 2241(c) is nevertheless available.

■ Congress may mandate the detention of illegal aliens convicted of aggravated felonies pending the execution of an order of deportation or exclusion. Nevertheless, the Attorney General is not free to extend that detention significantly by failing to undertake timely the steps necessary to effectuate deportation. Otherwise, the "detention under pretense of awaiting opportunity for deportation would amount, and will amount to an unlawful imprisonment from which relief may be afforded by ... habeas corpus." *United States ex rel. Ross v. Wallis*, 279 F. 401, 403–04 (2d Cir.1922). *See also Rodriguez–Fernandez v. Wilkinson*, 654 F.2d 1382, 1387–88 (10th Cir.1981); *Davis v. Weiss*, 749 F.Supp. 47, 53 (D.Conn.1990) (holding mandatory detention of certain criminal aliens pending deportation proceedings constitutional, although "the alien would always have a writ of habeas corpus as a remedy" if he is unduly detained "for any impermissible length of time" pending the deportation hearing).

Accordingly, the issue presented in each of these consolidated cases is whether the Attorney General is "proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case ... to effect such alien's departure from the United States within such six-month period."

*Nwankwo v. Reno*

■ Kenechukwu Nwankwo was sentenced to the custody of the Attorney General for a period of thirty-three months for attempting to import 189.5 grams of a substance of which 61% was heroin. Mr. Nwankwo completed serving his sentence on January 12, 1993, and an uncontested order of deportation was entered on January 15, 1993. Three weeks later, he wrote advising me that he was still incarcerated at the Federal Correctional Institution at Oakdale, Louisiana. Mr. Nwankwo's letter continues as follows:

> "I come from a very good family and everyone is still suffering as a result of my stay here. My father is ailing and I need to go home and help him. I have tried repeatedly to get the authorities here to

help me, but to no avail. Please I do not know what else to do in this situation. I have paid dearly for my crime. I strongly believe that you can use the power of a Federal Judge to help resolve this problem."

After receiving this letter I contacted Billy Hammons, a Special Agent of the Immigration and Naturalization Service at the Federal Correctional Institution in Oakdale, Louisiana. Mr. Hammons, who has been relied upon by the United States Attorney as the prime source of information on these matters, advised that the reason for the delay in carrying out the order of deportation was the fact that the Drug Enforcement Administration, which had originally seized Mr. Nwankwo's passport, could not find it. Mr. Hammons indicated that the Immigration and Naturalization Service was in the process of obtaining a substitute travel document from the Nigerian Embassy, a task that Mr. Hammons estimated would take thirty days. Mr. Hammons indicated that Mr. Nwankwo would be deported by the end of February.

On February 17, 1993, I advised Mr. Nwankwo of the reason for the delay in his deportation and told him that I was treating his letter as a petition for a writ of habeas corpus. I further advised him that, in the event he was not deported by March 1, 1993, I intended to enter an order directing his release from custody "subject to any objections the United States Attorney may wish to interpose in the interim." A copy of the letter was sent to the United States Attorney.

On March 1, 1993, Nancy L. Hooks, the Officer-in-Charge of the Immigration and Naturalization Service at Oakdale, Louisiana, advised me that the requisite travel document could not be obtained "within the time limit set by the court." She estimated that, based on "our experience, it could take another sixty to ninety days before a travel document is received." This would mean that Mr. Nwankwo would be incarcerated for as long as four and one-half months after completing his thirty-three month sentence.

Moreover, although Mr. Nwankwo remains incarcerated at the same Bureau of Prisons' facility at Oakdale, Louisiana, in which he served the latter part of his sentence, his changed status from prisoner to detainee has deprived him of certain privileges that he would have had as a prisoner. In a letter dated March 2, 1993, he writes:

"I received your letter of February 17, 1993. I wish to thank you for your action. As of this date I have not been deported nor does it appear I will be, any time soon.

I wish to bring one point of information to your attention. While at F.C.I. La Tuna, Texas, I had injured my right shoulder. I had been scheduled to have surgery on it. However, this surgery was cancelled due to my changing status—from sentenced to detainee. While this is not life threatening, I have been constantly in severe pain, and lack of surgery in a timely manner can lead to a serious disability.

I respectfully await your decision in this matter.

Thank you."

Notwithstanding the significant *de facto* increase of Mr. Nwankwo's sentence, as well as to the acknowledged cost to the taxpayers of Mr. Nwankwo's continued unjustified incarceration,[1] Ms. Hooks asks that I not order Mr. Nwankwo's release:

"Mr. Nwankwo is not eligible for any form of relief from deportation. Our experience in such cases indicates he is an extremely high bail risk if released from custody. The Court is urged not to order Mr. Nwankwo released."

Letter of Nancy L. Hooks, dated March 1, 1993, p. 2.

I reject this request. The delay in effecting Mr. Nwankwo's deportation and the projected additional delay of sixty to ninety days is unconscionable. The Immigration and Naturalization Service has long been aware of delays caused by the failure of the Drug Enforcement Administration to forward the necessary travel documents. Indeed, as re-

---

1. The average monthly per capita cost of incarcerating a prisoner in a federal prison facility is $1,492. Administrative Office Memorandum, "Costs of Incarceration and Supervision," August 7, 1991.

sult of the attention *United States v. Restrepo* called to this problem, representatives of the United States Attorneys Office and Billy G. Hammons of the Immigration and Naturalization Service met on November 19, 1992 to discuss steps that would be taken to facilitate and expedite the deportation process for convicted aliens at the conclusion of their sentences. The memorandum, which summarizes the outcome of the meeting and which was provided by the United States Attorney, indicates that the "immediate concern" of the meeting was "the delay occasioned by the inability to promptly locate the aliens' travel documents, which are required by the receiving country." Memorandum from William J. Muller, Chief Criminal Division, United States Attorneys Office, dated February 19, 1993.

While procedures were adopted that are intended to avoid such delays with respect to aliens arrested thereafter, there were no steps taken to avoid the delay encountered here. If the Immigration and Naturalization Service was concerned, as it now suggests, with "the humane consideration of minimizing detention," as well as the burden and expense of such prolonged post-sentence incarceration, it should have made efforts to obtain Mr. Nwankwo's passport long before his sentence expired. Instead, it delayed in obtaining a final order of deportation until the day after Mr. Nwankwo completed his sentence and, for all that appears in the record, it did not make any serious effort to deal with the problem of the missing passport until after his *pro se* application was filed.

The failure of the Drug Enforcement Administration to maintain and forward the passport is likewise inexcusable. Indeed, the callous attitude of the Drug Enforcement Administration is similarly reflected in the second and third of the three cases that have been consolidated here. In *Peters v. Reno* it took four months to comply with an order that Mr. Peters' passport be forwarded to the Immigration and Naturalization Service in Oakdale. In *Umah v. United States*, it has yet to comply with an order entered December 29, 1992 to forward Mr. Umah's passport.

*Peters v. Reno*

 Egebetayo Peters was sentenced to the custody of the Attorney General for a period of forty-one months for attempting to import 497.7 grams of a substance of which 28% was heroin. Mr. Peters completed his sentence on January 1, 1993. An uncontested order of deportation was entered on November 17, 1992. On the same day I entered an order directing that Mr. Peters' passport, which was seized by the Drug Enforcement Administration after his arrest, be forwarded to the Immigration and Naturalization Service in Oakdale, Louisiana. The order was entered for the specific purpose of avoiding the kind of costly and unjustified incarceration that Mr. Peters has suffered. The passport was not forwarded by the Drug Enforcement Administration until March 12, 1993.

Neither the United States Attorney nor the Drug Enforcement Administration has offered any explanation for the delay in complying with my order that has already resulted in a three-month extension of Mr. Peters' incarceration. Moreover, it was not until March 24, 1993, after I requested a response to Mr. Peters' *pro se* application, that the Immigration and Naturalization Service forwarded Mr. Peters' passport to the Nigerian Embassy in order to obtain the final clearance for Mr. Peters' deportation. In this case, as in *Nwankwo v. Reno*, it is not possible to justify any further extension of Mr. Peters' detention.

*Umah v. United States*

Stanley Umah was sentenced to the custody of the Attorney General for a period of thirty-three months for attempting to import 259.6 grams of a substance of which an unspecified amount was heroin. Mr. Umah is scheduled to complete his sentence on April 5, 1993. An uncontested order of deportation was entered on February 3, 1993. Mr. Umah seeks to avoid the extended incarceration suffered by Mr. Nwankwo and Mr. Peters. Specifically, Mr. Umah seeks to compel the Drug Enforcement Administration to comply with an order entered on December 29, 1992 that directed the Drug Enforcement Administration to forward his passport to the Immigration and Naturalization Service at

Oakdale. Again without explanation, the Drug Enforcement Administration has failed to comply with this order. In his letter Mr. Umah writes:

"The Immigration and Naturalization Service here claims that they do not have my passport irrespective of your order to the Drug Enforcement Agency to return all tickets, passports and other travelling documents. I was transferred to this place six (6) months [prior] to my release date and still they don't have my passport. It is simply unfair to keep inmates for up to five (5) months after serving their sentences."

### Discussion

■ *United States v. Restrepo,* 802 F.Supp. 781 (E.D.N.Y.1992), involved the issue of whether collateral consequences that deportable aliens face should be considered in imposing sentence. Among those consequences was extended incarceration of the kind at issue in the present cases. While the United States Attorney there opposed any downward departure that would mitigate the effect of such detention, she did acknowledge that, if "a particular defendant is detained past his term because of Immigration and Naturalization Service nonfeasance, he may, of course, seek habeas relief under 28 U.S.C. § 2241(c)." Brief for the United States, *United States v. Restrepo,* No. 92–1631, 2d Cir., p. 32. The nonfeasance of the various employees of the Attorney General, to whose custody these petitioners were sentenced and in whose custody they remain, plainly justifies the issuance of the writ in *Nwankwo v. Reno* and *Peters v. Reno.* Indeed, such relief is particularly appropriate here, because the failure of the Attorney General to properly maintain and procure the aliens' passports makes it impossible to simply enter an order in the nature of a writ of mandamus directing her to deport them.

Although petitioners' custodian is not present in the Eastern District of New York, this defect does not affect subject matter jurisdiction. Title 28 U.S.C. § 2241(a) authorizes United States district court judges to issue writs of habeas corpus "within their respective jurisdictions." This clause requires only that "the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction'." *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 495, 93 S.Ct. 1123, 1130, 35 L.Ed.2d 443 (1973); *United States ex rel. Sero v. Preiser,* 506 F.2d 1115, 1129 (2d Cir.1974), *cert. denied,* 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975) ("jurisdictional grant in § 2241(a) construed as coextensive with scope of service of process, *see* Fed.R.Civ.P. 4(f) …").

The fact that the custodian may not be amenable to process in New York pursuant to Fed.R.Civ.P. 4(f) may provide the basis for a defense based on lack of jurisdiction over the person. Such a defense, however, "can be waived by failure [to] assert [it] seasonably, by formal submission in a cause, or by submission through conduct." *Marcial Ucin, S.A. v. S.S. Galicia,* 723 F.2d 994, 996–97 (1st Cir.1983) (quoting *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 168, 60 S.Ct. 153, 155, 84 L.Ed. 167 (1939)). The rule is the same in habeas corpus cases. *See Ex Parte Endo,* 323 U.S. 283, 305, 65 S.Ct. 208, 220, 89 L.Ed. 243 (1944); *Glazier v. Hackel,* 440 F.2d 592, 593 n. 1 (9th Cir.1971).

*United States v. Huss,* 520 F.2d 598 (2d Cir.1975), is consistent with the cases holding that such a defense may be waived in a habeas corpus proceeding. There the defendants in a criminal case, "who were represented by competent counsel, did not choose to file a petition for habeas corpus" in order to obtain the relief they sought. *Id.* at 605. On appeal, the Court of Appeals indicated that a habeas petition was an appropriate vehicle for the relief the defendants sought. Because a proceeding had not been filed in the district court, the Court of Appeals asked the Assistant United States Attorney arguing the appeal "to consult with the Bureau of Prisons and the Department of Justice and inquire whether the United States Attorney … could waive service of appropriate civil process and treat the case as if Warden Gengler or some other appropriate § 2241 respondent had been before the district court." *Id.* When the United States Attorney declined to make such "a jurisdictional

concession," the Court of Appeals held that the "unavailability of an appropriate civil respondent" precluded relief pursuant to 28 U.S.C. § 2241. *Id.* at 606.

An express waiver was required in *United States v. Huss* because the United States Attorney had not been put on notice in the district court that the defendants' application was being treated as a motion pursuant to § 2241. Accordingly, proceedings in the district court, including the testimony of Warden Gengler, could not be construed as an implied waiver of proper service of process. By contrast, here the United States Attorney was given notice that the *pro se* submissions of the defendants would be treated as petitions for writs of habeas corpus and no procedural objection was made. Subsequently, the United States Attorney and the Officer-in-Charge of the Immigration and Naturalization Service responded on the merits. Under these circumstances, the failure to effect service of process should be deemed waived. *See Ex Parte Endo,* 323 U.S. 283, 305, 65 S.Ct. 208, 220, 89 L.Ed. 243 (1944); *Glazier v. Hackel,* 440 F.2d 592, 593 n. 1 (9th Cir.1971).

This waiver would not preclude an order transferring venue if it would be more convenient to have the cases heard elsewhere. Because the facts are undisputed, the presence of petitioners is not required in the Eastern District of New York for a hearing. Accordingly, there is no reason to transfer the present cases. Moreover, the cause of the extended incarceration here has been explored in related cases and the issue is one with which the judges of the Eastern District of New York are familiar. Indeed, the extended incarceration of Mr. Peters and the threatened extended incarceration of Mr. Umah result largely from the failure of the Drug Enforcement Administration to obey orders entered in the Eastern District of New York directing that the passports of Mr. Peters and Mr. Umah be forwarded to the Immigration and Naturalization Service in Oakdale. Under these circumstances, transfer of the cases to the Western District of Louisiana can only have the effect of delaying the ultimate disposition of the cases.

Accordingly, for the foregoing reasons, the writ of habeas corpus is granted in *Nwankwo v. Reno* and *Peters v. Reno* and respondents are directed to release Mr. Nwankwo and Mr. Peters within seven days, unless they are deported prior thereto. The foregoing does not preclude the Attorney General from fixing terms and conditions for the aliens' release similar to those permitted by 8 U.S.C. § 1252(d). *See United States ex rel. Kusman v. District Director of Immigration,* 117 F.Supp. 541, 548 (S.D.N.Y.1953). In *Umah v. United States,* Robert A. Bryden, Special Agent-in-Charge of the Drug Enforcement Administration in New York, is ordered to forward Mr. Umah's passport to the Immigration and Naturalization Service within 10 business days from the date of this order or show cause why a contempt order should not be entered.

SO ORDERED.