The foregoing memorandum constitutes our findings of fact and conclusions of law.

The Clerk is directed to enter judgment in favor of garnishee and against plaintiff.

James X. C. LONG, Maurice X. Walker, Paul X. Rex Williams, Edward X. Brown, Ronald X. D. Hector, Mr. Ruben X. Jackson, Bobbie L. X. Colter, James X. A. Lovejoy and Joseph X. C. Carlisle, Plaintiffs,

v.

Mr. Nicholas KATZENBACH, Attorney General, U. S. Justice Department, and Jacob J. Parker, Warden, United States Penitentiary, Lewisburg, Pennsylvania, Defendants.

Civ. A. No. 9152.

United States District Court
M. D. Pennsylvania.

July 22, 1966.

Supplemental Memorandum Aug. 16, 1966.

James X. C. Long and others, pro se.

Bernard J. Brown, U. S. Atty., Scranton, Pa., Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., for defendants.

## MEMORANDUM

FOLLMER, District Judge.

James X. C. Long, a prisoner at the United States Penitentiary, Lewisburg, Pennsylvania, was granted leave to commence this action under 28 U.S.C. § 1361,

in forma pauperis, against the above defendants. The other plaintiffs, all inmates at the Lewisburg Penitentiary, except Paul X. Rex Williams,[1] were added, at their requests, at various subsequent dates. The defendants have filed an Answer and an Amended Answer, and have filed a Motion to Dismiss the Complaint or in the alternative a Motion for Summary Judgment. This Court ordered that the motions be determined on brief written statements in support of and in opposition to the motions, pursuant to Rule 78 of the Federal Rules of Civil Procedure. This has been done and the motions are before this Court at this time.

Since the plaintiffs are inmates of a penal institution, the pleadings lack the legal niceties of the normal pleadings in this Court. Therefore the complaint will be given a reasonably liberal reading in ascertaining whether claims have been stated upon which relief could be granted. See Roberts v. Pegelow, 313 F.2d 548, 550 (4th Cir. 1963).

The allegations in the Complaint and the pleading filed on January 3, 1966 are substantially as follows: The Black Muslims are permitted to meet on Fridays at 6:00 P.M. in a "small room" at the Lewisburg Penitentiary. On August 20, 1965, about fourteen Muslims responded to the Friday service call, but a Lieutenant Clark and another officer had a Muslim list of those who had designated Black Muslim as their religion upon commitment to the institution. Only four or six of the fourteen were on the Muslim list and only they were given permission to enter and go to the service. Therefore, all fourteen went to the recreation area, after receiving assurances that the ones not on the Muslim list would be placed thereon during the following week. After recreation, seven of this group of fourteen were "locked up" for investigation for attending the Muslim service call, and property belonging to these seven was taken, including Islamic prayers and articles, which property was not returned.

On Monday, August 23, 1965, two spokesmen contacted the Protestant Chaplain of the Lewisburg Penitentiary in regard to the "lock up" of the seven. The Chaplain contacted the Acting Warden, Paul F. Bolliger, and these seven were released in a few hours, after being questioned about their beliefs.

During the week, some Muslims contacted the Protestant Chaplain again, and he explained that there was an institutional rule that no inmate could change his religion while in the penitentiary. The Complaint then reads: "We then asked that they keep their records the way they have them but to let us attend our religious service anyway."

On Friday, August 27, 1965, about twenty inmates went to the Muslim service call and were again told that they were not all on the Muslim list and those not on the list could not attend the services. In regard to the Muslim list, it is alleged that other religious groups do not have lists and that any inmate can attend Christian and Jewish services, regardless of the religion designated upon commitment, although no inmate is allowed to convert.

Plaintiff Bobbie X. L. Colter alleges in his "Motion for Addendum", filed May 4, 1966, that he is designated a Christian, but that he is now a Muslim and is denied the right to practice Islam. It is further claimed that he attempted to attend a Muslim meeting on September 20, 1965, and that he was denied permission to attend and was "placed on A/S (Administrative Segration) for several days for making an orderly effort to attend that service."

The remaining allegations assert that the Muslims are not given a Muslim Chaplain; not allowed a Muslim minister and are not allowed to write to Elijah Muhammad to have him send a minister; Muslims are not allowed to worship in the Penitentiary Chapel, but are offered a "small room"; Muslims are placed in solitary confinement only because of what they believe, and that Muslims are denied

---

1. Paul X. Rex Williams was released on parole on March 1, 1966.

the right to receive certain Islamic literature.

The defendants filed an Answer on January 4, 1966, and an Amended Answer on May 19, 1966. In the defendants' Answer it is stated that James X. C. Long is on the list of Muslims and that on August 20 and August 27, 1965 he could have attended the services but voluntarily declined to do so.

In the Lewisburg Penitentiary, proselyting by inmates is prohibited as a source of agitation, physical violences, and disruption of rehabilitation. Therefore, to control proselyting, inmates designate their religious preference on commitment and are placed on lists with those of that religion. They cannot change their affiliation during imprisonment. Separate lists of the inmates of each of the smaller religions are made both to control proselyting and the activities of the numerous services.

The institution's chapel is used for the larger denominations, Catholic, Protestant and Jewish; but because of the limited space and supervision, special quarters are designated for each of the small religious groups, including the Muslims.

The defendants' Answer further states that it would be impossible to appoint a chaplain for each of the numerous religious sects. Each inmate is permitted to correspond with a hometown minister, but for correctional and rehabilitation reasons they are not allowed to correspond with religious or political leaders.

Plaintiffs, Long, Walker, Brown, Hector, Jackson, Lovejoy and Carlisle are all on the Muslim list and are permitted to attend Muslim meetings. Colter certified himself as a Baptist when he was committed. Williams was released on parole on March 1, 1966, and will be stricken as a plaintiff since the matter is moot as to him.

■■ In considering the defendants' motion, it will be treated as one for summary judgment and disposed of as provided in Rule 56 of the Federal Rules of Civil Procedure. It is well settled that a motion for summary judgment does not lie where there is a genuine issue as to a material fact. The burden is on the moving party and matters presented must be construed most favorably to the party opposing the motion. See Wright on Federal Courts, § 99 (1963 ed.)

■ The constitutional issues which are raised here concern the guarantees contained in the First Amendment and in the Equal Protection Clause. See Comment, 62 Colum.L.Rev. 1488 (1962). It is also recognized that the right to practice a religion is subject to limitations protective of prison security and discipline or other legitimate prison interests. Walker v. Blackwell, 360 F.2d 66 (5th Cir., 1966); Desmond v. Blackwell, 235 F.Supp. 246 (M.D.Pa.1964). With these considerations in mind, the specific issues will be examined in light of the defendants' motion.

■ The first contention is that Muslim services are held in a small room, instead of the Chapel. There is nothing to the contention that the Muslims must be allowed to have services in the Chapel. There is nothing in this claim that indicates there has been any infringement of the plaintiffs' constitutional rights. There are many small sects at the Lewisburg Penitentiary and the claim here does not indicate any unfair treatment or deprivation of religious activities in any way. The place of holding the Muslim meeting lies in the administrative discretion of the institution and will not be interfered with by the courts.

■ The second claim is that Muslims are the only religious group with a "list" of those who are allowed to attend services. The Lewisburg Penitentiary has a list designating the religion of all its inmates. There is no discrimination here. The lists are kept for legitimate reasons of controlling proselyting and thus preventing breach of prison security and encouraging rehabilitation. Moreover, all of the plaintiffs except Colter are on the list of those permitted to attend the Muslim meetings.

■ The third allegation is that a "recorded" Christian cannot attend Mus-

lim meetings, although a "recorded" Black Muslim can attend other religious services. The only plaintiff that this allegation applies to is Colter. The other plaintiffs are all on the Muslim list, so there is no controversy as to them. The classification which is alleged to exist here is unexplained in the defendants' Answers and brief. There may be a legitimate reason for this rule, but this Court has nothing to show that this was a reasonable classification. See Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). Under these circumstances, it will be determined whether justification exists for this rule, but this will be limited to the plaintiff Bobbie L. X. Colter only.

The fourth claim is that Black Muslims are not allowed to obtain certain "religious literature." The claim is rather vague. Moreover, in the defendants' brief, Exhibit G shows that Long was issued a booklet entitled "Muslim Daily Prayers" and a booklet containing various stories, on February 15, 1965. On March 29, 1965, Long was issued "The Holy Quran" by A. Yusuf Ali. The plaintiffs complain they cannot receive the weekly newspaper, "Muhammad Speaks." This is highly inflammatory material and any such refusal is justified. Desmond v. Blackwell, 235 F.Supp. 246 (M.D.Pa.1964). The only other specific book that was denied is "The Message to the Blackman" by Elijah Muhammad. Long was denied this book. There is nothing to indicate that this is legitimate Islamic literature or that the right of censorship was abused. There is no evidence that any legitimate request has been refused. Accordingly, there is nothing to this claim.

The fifth contention is that Black Muslims are not given a Chaplain, nor are they allowed to correspond with Elijah Muhammad to obtain a Chaplain. At the institution there are only two Chaplains. There is nothing arbitrary about not supplying a Chaplain for every religious sect. It is easily seen that this would be next to impossible and that there is no discrimination here. As to

Mr. Muhammad, it is the policy of the institution not to permit an inmate to correspond with the head of his religious group and Mr. Muhammad besides being the alleged head of the "Nation of Islam", is an ex-convict whose writings are inflammatory and the antithesis of the goal of rehabilitation. See Desmond v. Blackwell, 235 F.Supp. 246, 249 (M.D.Pa. 1964). There is nothing here that indicates that any action taken by the prison authorities was arbitrary or capricious.

The sixth allegation is that Black Muslims have been punished for their religious beliefs. The only plaintiff that gives any specific facts is Colter. In Colter's "Motion for Addendum" it is alleged that he was placed in administrative segregation solely because he made an "orderly effort" to attend a Muslim meeting on September 20, 1965. The short answer is that Colter was placed in administrative segregation from July 9, 1965 through August 20, 1965 for possession of contraband and insolence. Colter was not in segregation during the rest of 1965. Thus, there is no real issue here.

Accordingly, the defendants' Motion to dismiss will be granted as to all plaintiffs except that as to Bobbie L. X. Colter it will be determined whether justification exists for the rule that he, as a Christian, cannot attend Muslim meetings.

## SUPPLEMENTAL MEMORANDUM

By Order dated July 22, 1966, this Court ordered submission of briefs and affidavits as to the issue of whether justification exists for the rule that Bobbie L. X. Colter cannot attend Muslim meetings in the United States Penitentiary, Lewisburg, Pennsylvania. On August 11, 1966, the defendants filed a Response, accompanied by certain exhibits, which renders this issue moot as to Colter.

On August 4, 1966, the Lewisburg Penitentiary issued a policy statement in regard to the religious beliefs and practices of the Islamic Black Muslim faith. The policy statement, inter alia, shows that recorded Black Muslims

may attend weekly meetings, special services may be arranged in advance, procedures for changing religious affiliation have been provided and further rules governing religious literature, radio programs and medals have been promulgated. The policy statement shows a sincere and effective concern for fairness and equal treatment of all inmates, while balancing the legitimate prison interests of security and discipline.[1] The exhibits further show that Colter complied with the necessary steps to change his religious affiliation from Baptist to Black Muslim and that on August 11, 1966, Colter's name was added to the list of those allowed to attend Muslim meetings in the United States Penitentiary, Lewisburg, Pennsylvania.

Accordingly, the issue as to Bobbie L. X. Colter is moot and the Motion of the defendants to dismiss the Complaint as to Bobbie L. X. Colter will be granted.

1. It should be noted that the right to practice a religion is subject to limitations protective of prison security and discipline or other legitimate prison interests. Walker v. Blackwell, 360 F.2d 66 (5th Cir. 1966); Desmond v. Blackwell, 235 F.Supp. 246 (M.D.Pa.1964).