**Alfred Earl TOLES, Appellant,**

v.

**Hon. Nicholas KATZENBACH, Acting Attorney General of the United States, Hon. Myrl Alexander, Director U. S. Bureau of Prisons, R. W. May, Warden, U. S. Penitentiary, McNeil Island, Washington, Appellees.**

No. 21268.

United States Court of Appeals
Ninth Circuit.

Sept. 27, 1967.

Rehearing Denied Oct. 23, 1967.

Browning, Circuit Judge, dissented.

Alfred E. Toles, in pro. per.

Eugene G. Cushing, U. S. Atty., Tacoma, Wash., for appellee.

Before POPE, MERRILL and BROWNING, Circuit Judges.

MERRILL, Circuit Judge:

Appellant is a Negro inmate at the United States Penitentiary, McNeil Is-land, Steilacoom, Washington. By this suit he seeks injunctive relief from alleged violations of Constitutional rights through practices of the institution resulting in racial segregation in the housing of inmates and discrimination in work and other program assignments. The District Court rendered summary judgment in favor of appellees, and appellant, *in propria persona,* has taken this appeal. Treating the suit as one in the nature of mandamus, we recognize jurisdiction of the District Court to be conferred by 28 U.S.C. § 1361 (1964).[1]

Appellant has already accomplished something of what he seeks. In May 1965, well after the complaint in this action was filed, appellee warden published the following Statement of Policy:

"The following procedure will be followed in making inmate assignments to housing, work and program.

"The Associate Warden (C), recognizing the uniqueness of long-term residence in a compact penal community; in the interest of compatability and congeniality, but without regard for race, creed, or national origin; will make assignment where vacancies exist.

\* \* \* \* \* \*

"POLICY:—With due consideration and respect for the rights and privileges of all, irrespective of race, religion, or national origin, there shall be no distinction made when assignment is made to housing, work, and other program areas."

With regard to work and program assignments, appellee warden denied discrimination in an affidavit, and referred to the policy statement quoted above. It also appears that appellant was given a new job assignment, which he admits was integrated. Appellant's allegations and his response to appellee's affidavit give no facts to support his general conclusion that such matters

1. Walker v. Blackwell, 360 F.2d 66 (5th Cir. 1966); Fallis v. United States, 263 F.Supp. 780 (M.D.Pa.1967); Long v. Katzenbach, 258 F.Supp. 89 (M.D.Pa. 1966); Hill v. United States Board of Parole, 257 F.Supp. 129 (M.D.Pa.1966); cf. Fulwood v. Clemmer, 111 U.S.App. D.C. 184, 295 F.2d 171 (1961).

were affected by racial discrimination. It was therefore not error for the District Court to conclude that no factual issues were presented for resolution on trial.[2] Fed.R.Civ.P. 56(e); Moran v. Bench, 353 F.2d 193 (1st Cir. 1965); cert. denied, 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359 (1966); Dressler v. MV Sandpiper, 331 F.2d 130 (2d Cir. 1964).

As to segregated living quarters, appellant has gone into considerable detail, mentioning specific cells and the exact pattern of the alleged segregation, said to have existed as to cells for ten men or less. He asserts that there had been in the warden's office a "white waiting list" and a "colored waiting list"; that a directive of the Bureau of Prisons provided that inmates of "similar background" be assigned to two, five and ten man cells; and that in practice this meant simply that Negroes are separated from non-Negroes, since no other background issue was considered.

Appellees denied the complaint, referred to the policy statement quoted above, and alleged that appellant had been offered a change of cell assignment but had refused it. Appellant responded that the offer was contingent on his securing the agreement of the inmates of the requested cell. The warden filed an affidavit reciting a policy of allowing inmates some degree of choice as to their cell assignment, but denying that there existed any institutional policy of racial segregation.

Appellant's allegations thus raise two problems: racial segregation caused by assignments to quarters made by prison officials (all initial assignments are so made), and discrimination in securing changes of quarters, where the officials deferred to the wishes of the inmates as to their cell companions.

█ Appellant must, of course, recognize that while his status as prisoner does not deprive him of all constitutional protection, still the requirements of prison discipline cannot accommodate the full play of the Bill of Rights. One who engages in criminal conduct and thereby incurs a penal obligation must be held to have forfeited his constitutional rights to such extent as the meeting of that obligation requires.

█ We recognize that the equal protection clause still forbids arbitrary discrimination in the treatment of prisoners, and assume, arguendo, that claimed racial discrimination in official assignment of living quarters may present a justiciable issue in this respect.[3] In the case before us, however, the quoted policy statement in our judgment renders moot claims as to the period prior thereto. The policy, if adhered to, itself provides the remedy sought by appellant. If not adhered to, a new claim may arise.[4]

2. Our conclusion on this issue is assisted by the fact that appellant had counsel during the period when summary judgment was moved for and granted.

3. See Singleton v. Board of Com'rs of State Institutions, 356 F.2d 771 (5th Cir. 1966); Rivers v. Royster, 360 F.2d 592 (4th Cir. 1966); Edwards v. Duncan, 355 F.2d 993 (4th Cir. 1966); Bolden v. Pegelow, 329 F.2d 95 (4th Cir. 1964); Washington v. Lee, 263 F.Supp. 327 (M.D.Ala.1966); Dixon v. Duncan, 218 F.Supp. 157 (E.D.Va.1963).

4. The promulgation of the policy statement was accompanied by a notice that:
"There will be no moves made as to present quarters but, in the future, as men are classified or moved for any reason, they will be assigned to a cell with no restrictions as to race or color.

"We will continue to permit men to request a specific cell. These requests will be honored providing there is a vacancy and providing the men who are in the cell sign the request indicating that they are willing for the man to move into their cell."
This notice was quoted by appellant to show that any segregation caused by the alleged past discrimination in official assignments had not abated. However, it appears that the cells described by appellant as being segregated are the least desirable ones in the prison, to which a prisoner is assigned on first arrival. Three months later he is eligible to move to dormitory style "halls," which the warden asserts are and have been integrated. Appellant does not assert otherwise.

■ The policy statement did not, however, end the practice, when assignment to a specific cell is requested, of deferring to the wishes of those already quartered there. The question is presented whether this practice is to be tolerated. The answer depends not on whether segregation results, but whether there is acceptable reason for the practice. The record answers this decisively.

The practice is founded on interests of harmony, security, and the compatibility of prisoners confined for long terms—all matters of vital concern in prison operation. The practice in our judgment is a reasonable means of furthering these interests. Under this practice the fact that the interests are directly involved in a particular case is not left to assumption based upon experience gained in other cases, but is assured by inquiry in each individual case.

Appellant's briefs *in propria persona* constitute an eloquent plea that enlightened penology should do more than simply refrain from official discrimination; that an opportunity is afforded within prison walls affirmatively to further racial understanding and that this opportunity is being substantially ignored. We cannot but sympathize with appellant in his purpose. He seems already entitled to credit for some progress. However, beyond what has already been achieved, his ends do not reach the level of Constitutional right.

Judgment affirmed.

BROWNING, Circuit Judge (dissenting):

Appellant alleges that segregation by race continues at the McNeil Island Penitentiary because the penitentiary has left unchanged the cell assignments which were made in accordance with the previous policy of segregation and because those prisoners previously assigned to a segregated cell must remain in that cell until, first, a vacancy occurs in another cell, second, an application is then made for transfer to that cell, and, finally, the transfer is consented to by all of the occupants of that cell.

If long-continued discrimination has occurred and appellant's situation is one of its vestiges, as alleged, the prison authorities have a duty to eliminate that vestige as well as the policy that gave rise to it. Louisiana v. United States, 380 U.S. 145, 154–155, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965). They may not be heard to say that they have delegated to the inmates the rectification of a situation which the authorities themselves created. Meredith v. Fair, 298 F. 2d 696, 702 (5th Cir. 1962), summarily rejected a similar defense.

The majority quite properly states that the question "[is] not on whether segregation results, but whether there is acceptable reason for the practice." The court concludes that "The record answers this decisively."

*All* that the record discloses is that the penitentiary authorities said in a public statement of policy that assignments to vacancies would be made "recognizing the uniqueness of long-term residence in a compact penal community; in the interest of compatability and congeniality, but without regard for race, creed, or national origin. * * *" A government-created and sustained system of racial segregation requires more substantial justification than this cryptic and self-serving statement. Whether the practices which preserve racially segregated cells are justified by "pressing public necessity" (Korematsu v. United States, 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1945)) is a question which could be properly determined in this case only after a plenary hearing by the trial court.

The court states (note 4) that the impact of the practices complained of is limited. Appellant, however, alleges that the present effect of the prior policy "left most cells in No. 3 and 4 cell houses segregated and the same policy has continued to the date of this affidavit," and that "since February, 1964, there has never been an integrated cellhouse * * *" in the penitentiary. The court states that the racially allocated assignments endure for only the prisoner's ini-

tial three months of imprisonment. Appellant, however, alleges that he has been in McNeil Island Penitentiary since mid-1964 and is still in a segregated cell. Appellant's version of the facts should not be rejected without a hearing.