**Assata SHAKUR a/k/a Joanne Chesimard, Appellant,**

v.

**Benjamin MALCOLM, Individually and as Commissioner of Correction of the City of New York, et al., Appellees.**

**No. 231, Docket 75–2095.**

United States Court of Appeals, Second Circuit.

Argued Sept. 5, 1975.

Decided Sept. 26, 1975.

Stephen M. Latimer, New York City (Bronx Legal Services Corp., C. Donald Grajales, Project Director, New York City, of counsel), for appellant.

Patricia Zeserson, New York City (W. Bernard Richland, Corp. Counsel, New York City, L. Kevin Sheridan, New York City, of counsel), for appellees.

Before SMITH, HAYS and MESKILL, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The instant appeal from a decision of the United States District Court for the Southern District of New York, Thomas P. Griesa, *Judge,* asks this court to declare that certain regulations of the New York City Department of Corrections are unconstitutional as applied to appellant Assata Shakur. In particular, it is argued that departmental restrictions on paraprofessional visiting rights, as they affect appellant, are inconsistent with the recent Supreme Court decision in *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). For the reasons stated below, we decline appellant's invitation to overturn these regulations and dismiss the appeal.

I. *The Factual Setting*

Appellant Assata Shakur, a/k/a Joanne Chesimard, appeals from a ruling of the United States District Court for the Southern District of New York made in connection with a civil suit Ms. Shakur has instituted against the correctional department of the City of New York. Ms. Shakur is presently detained by the New York correctional department in the department's facility for women on Riker's Island, New York. Ms. Shakur's incarceration stems from her impending trial on criminal charges brought by the

State of New York. These criminal charges are not relevant to the instant appeal.

While on Riker's Island, Ms. Shakur maintains, she has been subjected to conditions of incarceration which allegedly violate her constitutional rights. Accordingly, Ms. Shakur has instituted a civil action under 42 U.S.C. § 1983, claiming such violations and seeking redress against the city correctional department and its personnel. Ms. Shakur is represented in her civil suit by the Bronx Legal Services Corporation (BLS). BLS employs several legal paraprofessionals. For the purpose of assisting its attorney in Ms. Shakur's § 1983 action against the correctional department, BLS has assigned three of its paraprofessionals to interview and otherwise work with Ms. Shakur. However, the correctional department, citing the possibility of an escape attempt and apprehension as to possible danger from these individuals, has denied these three paraprofessionals the right to visit Ms. Shakur under the same conditions as her attorney.

Personal visits are permitted at Riker's Island for half-hour periods in the evenings. Such personal visits occur under the supervision of department personnel while the inmates and visitors converse in a glass-partitioned booth using telephones. Attorneys, in contrast (including Ms. Shakur's attorney), are entitled to meet privately with inmates at Riker's Island during daytime, working hours without supervision or physical barriers.

The correctional department has granted permission for the three BLS paraprofessionals to meet with Ms. Shakur under the more stringent conditions maintained for personal visits including communication by phone through glass partitions in booths. The department claims that its denial of attorney-type visiting privileges to the three BLS paraprofessionals is predicated on specific information concerning the threat allegedly presented by these three particular individuals. Other BLS paraprofessionals may be accorded attorney-style visiting privileges, the department says, if they do not pose a similar security threat.

The district court (Thomas P. Griesa, *Judge*) denied Ms. Shakur's motion to force the correctional department to give attorney-type visiting rights to the three BLS paraprofessionals assigned to her civil case. Ms. Shakur now appeals that decision, arguing that it is inconsistent with the Supreme Court's holding in *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974).

## II. *Appealability*

Before reaching the merits of appellant's claim, we must dispose of the threshold question of appealability. There is no doubt that the order of Judge Griesa being challenged here is interlocutory in nature. The substantive controversy before the district court, Ms. Shakur's § 1983 action against the correctional department, remains with Judge Griesa. There has been no final disposition of that case. The order before us is procedural in character and pertains to the method of resolving the substantive controversy which remains below.

Nevertheless, appellant Shakur claims that Judge Griesa's decision is appealable notwithstanding its interlocutory nature. We disagree.

Ms. Shakur's first claim of appealability is premised on the provision of 28 U.S.C. § 1292(a) which makes decisions granting or denying injunctions appealable, even if such decisions are interlocutory.[1] However, prior case law makes it

1. Section 1292(a) reads in pertinent part:

> The courts of appeals shall have jurisdiction of appeals from:
> (1) Interlocutory orders of the district courts of the United States, . . . or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court . . . .

clear that Judge Griesa's ruling does not come within this statutory provision.

▮ Section 1292(a) has been construed by this court to impart appealability only to those injunctive orders which affect the substance of the plaintiff's basic claim. Procedural rulings which are incidental to the resolution of the substantive issues are not within the scope of this provision: *International Products Corp. v. Koons*, 2 Cir., 325 F.2d 403 (1963). Such a restriction of § 1292(a) is necessary to further the policy of the "final order" rule: decisions should not be appealed piecemeal unless a substantive question of great importance is involved. "Mere" procedural issues should be dealt with as a single package upon the conclusion of the district court proceeding.

▮ Since Judge Griesa's order is so clearly procedural rather than substantive (indeed, appellant makes no claim to the contrary), it falls outside the ambit of § 1292(a).

▮ Ms. Shakur's second claim to appealability rests on the doctrine of *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1948). The *Cohen* decision held that a small number of interlocutory orders are appealable when they present issues of sufficient importance and independence from the cause itself to warrant immediate review by the appellate courts. Perhaps inevitably, the *Cohen* exception, as applied, has evolved into a balancing test with the disadvantages of piecemeal appeal weighed against the importance of the questions raised by the interlocutory order. If the issue presented is of broad applicability or involves the deprivation of significant rights, the *Cohen* doctrine applies. We must balance the "inconvenience and costs of piecemeal review

on the one hand and the danger of denying justice by delay on the other." *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1949).

As this case stands before us now, the requirements of *Cohen* have not been met. Unquestionably, the three BLS paraprofessionals would prefer more flexible visiting arrangements. However, we do not believe that the restrictions complained of pose a question of sufficient gravity to merit the invocation of *Cohen*. Unlike *Procunier, supra*, we are not dealing with an absolute bar on paralegal personnel here. The three BLS paraprofessionals are free to meet with Ms. Shakur under departmental rules. Moreover, BLS apparently has five other paraprofessionals who could be assigned to Ms. Shakur's case and who presumably will receive attorney-type visiting privileges, if such privileges are requested.[2]

This, moreover, is not like a case where an attorney is being disqualified from further participation in the conduct of a lawsuit. *See, e. g., Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 496 F.2d 800 (2d Cir. 1974); *General Motors Corp. v. City of New York*, 501 F.2d 639 (2d Cir. 1974); 9 J. Moore, *Federal Practice* ¶ 110.13[10]. We do not believe that it in any way denigrates paralegal personnel to observe that the removal of an attorney is usually a matter of significantly greater seriousness than the removal of a paraprofessional. And, as we emphasized above, the three BLS paraprofessionals are not being barred from participating in Ms. Shakur's civil lawsuit. This is merely a case where paraprofessional participation has been made subject to certain reasonable security precautions of the New York City corrections department.

2. In oral argument, appellant stated that BLS has five paraprofessionals in addition to the three already assigned to Ms. Shakur's civil case. While BLS maintains that these five additional paralegals cannot work on Ms. Shakur's lawsuit because of inexperience with

prisoner petitions, we indicate our view below that the tasks to be performed in connection with Ms. Shakur's § 1983 suit are such that most paraprofessionals can be trained to handle them with reasonable ease.

In summary, we do not believe that the question raised by appellant Shakur· is of sufficient importance or involves a sufficiently severe restriction of rights to merit appealability under *Cohen.* Hence, we dismiss this appeal.[3]

**3.** Since we have decided against appellant on the issue of appealability, we do not decide the merits of her claim. We note, however, that *Procunier,* quite explicitly, establishes a balancing test for determining the reasonability of restrictions placed on paraprofessional visiting rights: "The extent to which [a] right is burdened by a particular regulation or ʹpractice must be weighed against the legitimate interests of penal administration and the proper regard that judges should give to the expertise and discretionary authority of correctional officials." *Procunier, supra* 416 U.S. at 420, 94 S.Ct. at 1815.

Viewing the restrictions complained of in this light, they do not appear unduly onerous or unreasonable. The three BLS paraprofessionals do have access to Ms. Shakur under the procedures available for regular, personal visits. This would seem sufficient for paralegal interviewers. If BLS finds these arrangements less than optimal, it is free to assign one of its other paraprofessionals to Ms. Shakur's lawsuit if these other paraprofessionals are eligible for attorney-type visiting privileges. While there may be some inconvenience in switching paralegal personnel at this stage of the litigation, we do not believe that the tasks performed by these three paraprofessionals are so complex or esoteric that other paralegals cannot master them in a reasonable amount of time. The arrangements must be weighed in the light of the demonstrated need for institutional security.

In short, it is unlikely that the restrictions imposed by the Department of Corrections violate the rule of *Procunier.*