Meir KAHANE,
Plaintiff-Petitioner-Appellee,

v.

Norman CARLSON, Director of the Federal Bureau of Prisons, et al.,
Defendants-Respondents-Appellants.

No. 274, Docket 75–2088.

United States Court of Appeals,
Second Circuit.

Argued Oct. 9, 1975.

Decided Nov. 26, 1975.

Edward S. Rudofsky, Asst. U. S. Atty. (David G. Trager, U. S. Atty., E. D. N. Y., Paul B. Bergman, Asst. U. S. Atty., of counsel; Burton S. Weston, Law Clerk, N. Y. University, on the brief), for appellant.

Barry Ivan Slotnick, New York City (Jay L. T. Breakstone, Law Clerk, Brooklyn Law School, and Garrett Lewis, Law Clerk, Fordham Law School, on the brief), for appellee.

Before KAUFMAN, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

In 1971, appellant Kahane, an orthodox Jewish rabbi, was sentenced in the Eastern District of New York to imprisonment and fine for conspiracy to violate the federal Firearms Act. 18 U.S.C. § 371. However, the sentence of imprisonment was suspended by the court, and Kahane was placed on probation. Kahane and his family had made their home in the Eastern District for many years prior to his conviction. While Kahane was on probation, they had removed to Israel with the permission of the court and Kahane had become a candidate for election to the Knesset, the Israeli Parliament. Kahane subsequently admitted to violating the terms of his probation. His probation was accordingly revoked, but his sentence of imprisonment was reduced to a term of one year. Kahane then sought, by several forms of action in the Eastern District of New York, orders requiring the prison administrators to conform the conditions of his incarceration to his religious beliefs concerning diet and prayer. The court, Jack B. Weinstein, *Judge*, found jurisdiction and venue in the Eastern District of New York and granted Kahane relief in the nature of mandamus.

We conclude that jurisdiction and venue were properly found by the district court in the instant action, that a need for relief was shown, but that the relief granted by the court was somewhat broader than required. We therefore modify the order and, as modified, affirm.

Jurisdiction in the court below was founded upon the mandamus power provided by 28 U.S.C. § 1361:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

The United States contends however that, even though mandamus jurisdiction exists generally in the district courts, venue does not properly lie in the Eastern District of New York for this particular mandamus action.[1]

---

1. Our Brother Friendly, in his concurring opinion, argues that mandamus under § 1361 is inappropriate for cases such as this because prisoners who reside in states far removed from the site of their incarceration will be able to bring suit over prison conditions in their home states, causing great inconvenience to all concerned. We simply note that 28 U.S.C. § 1404(a) gives the district judge very broad discretion to remove the prisoner's cause of action to another judicial district. If the district of the prisoner's residence is an inconvenient location for the mandamus action, § 1404(a) authorizes a shift of the lawsuit to the district of incarceration.

Several other circuits have granted § 1361 relief against prison officials, see, e. g., *Taylor v. Blackwell*, 418 F.2d 199 (5th Cir. 1969); *Barnett v. Rodgers*, 133 U.S.App.D.C. 296, 410 F.2d 995 (1969); *Long v. Parker*, 390 F.2d 816 (3d Cir. 1968), *vacated and remanded on other grounds*, 384 U.S. 32, 86 S.Ct. 1285, 16 L.Ed.2d 333 (1969); *Walker v. Blackwell*, 360 F.2d 66 (5th Cir. 1966). Indeed, the present action is a more appealing candidate for mandamus than those earlier cases, since Kahane is in effect challenging a nationwide policy of the Bureau of Prisons rather than the conditions of confinement in a single penitentiary.

28 U.S.C. § 1391(e) governs venue in mandamus cases.[2] According to the government, neither the prisoner's present or contemplated place of incarceration, nor the residence of any respondent was in the Eastern District. No real property is involved in the instant action nor could the cause of action regarding deprivation of kosher diet be said to have arisen in the Eastern District. Finally, the government maintains, plaintiff's residence is not in the Eastern District of New York. With this last assertion, we disagree.

■ The parties agree that the case does not qualify under subdivisions (1) and (3) of § 1391(e). We need not pass upon Kahane's contention that venue can be sustained under subdivision (2) since the circumstances do qualify the case under § 1391(e)(4), which establishes mandamus venue in the district of the plaintiff's residence. To be sure, residence for the purposes of § 1391 is often interpreted as equivalent to domicile, and there are some indications that Kahane has changed his domicile from the Eastern District of New York. 1 J. Moore, *Federal Practice* ¶ 0.142[5.1–1, 5.1–2, 7]; *Ellingburg v. Connett,* 457 F.2d 240, 241 (5th Cir. 1972); *Ott v. United States Board of Parole,* 324 F.Supp. 1034, 1037 (W.D.Mo.1971).

After his sentencing, Kahane moved to Israel with his family and ran for office there. Under ordinary circumstances that would be strong support for a finding of Israeli domicile. At the time of his conviction and sentence, however, he was a long-time resident of the Eastern District and was under active probation supervision there, a probation which he violated. Under these circumstances we hold that, until he had successfully completed probation and had been released from supervision, Kahane should have been considered a resident of the Eastern District for the purpose of venue, entitled to turn to the court for that district.

■ Venue is a doctrine of convenience of the forum. *Denver & R. G. W. R. R. v. Brotherhood of Railroad Trainmen,* 387 U.S. 556, 560, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967); *Rutland Ry. v. Brotherhood of Locomotive Engineers,* 307 F.2d 21, 29 (2d Cir. 1962), *cert. denied,* 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963); *Penrod Drilling Co. v. Johnson,* 414 F.2d 1217 (5th Cir. 1969), *cert. denied,* 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 495 (1970). Domicile is usually the best measure of that convenience since removal, with intent to relinquish personal ties to the old home and remain indefinitely at the new, is the handiest dividing line in measuring relative convenience of the forum. Here, however, continuing probation obligations to the court of the Eastern District made it more sensible to consider that district as Kahane's residence for the purposes of the venue statute. Because of the unusual circumstances here—Kahane's long-time residence in the Eastern District combined with his probation obligations to the court of that district—we conclude that venue was properly laid in the Eastern District of New York.[3]

---

**2.** 28 U.S.C. § 1391(e) provides:

A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action.

\* \* \* \* \* \*

**3.** Venue was broadened generally in mandamus actions against federal agencies to end concentration of actions in the District of Columbia and inconvenience to petitioners in the many distant districts in which the agencies operate. The Congress might well, however, consider narrowing the provisions for cases such as this which seek to affect the conduct of fixed institutions to the districts in which the institutions lie. See Coleman, J., dissenting in *Ellingburg v. Connett,* 457 F.2d 240 (5th Cir. 1972).

We therefore reach the merits of the matter.

■ It is by now quite well established that, while prisoners in penal institutions are subject to restrictions on their freedoms,[4] the restrictions are not without limit. *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Where they operate on fundamental rights such as the freedom of worship, the degree of restriction must be only that which can be justified by an "important or substantial government interest" in the restriction by the penal institution.[5] *Id.* at 413, 94 S.Ct. 1800.[6]

The courts have properly recognized that prison authorities must accommodate the right of prisoners to receive diets consistent with their religious scruples. *Chapman v. Kleindienst*, 507 F.2d 1246, 1251 (7th Cir. 1974); *Ross v. Blackledge*, 477 F.2d 616 (4th Cir. 1973); *Barnett v. Rodgers*, 133 U.S.App.D.C. 296, 410 F.2d 995 (1969).

> Their [Muslims'] request for "one full-course pork-free diet once a day and coffee three times daily" is essentially a plea for a modest degree of official deference to their religious obligations. Certainly if this concession is feasible from the standpoint of prison manage-

ment, it represents the bare minimum that jail authorities, with or without specific request, are constitutionally required to do, not only for Muslims but indeed for any group of inmates with religious restrictions on diet.

*Barnett v. Rodgers, supra* at 1001.

■ The evidence in this case justifies the court's finding of the deep religious significance to a practising orthodox Jew (which this prisoner concededly is) of the laws of Kashruth. The dietary laws are an important, integral part of the covenant between the Jewish people and the God of Israel.

The district court on the evidence before it was thoroughly justified in its finding of the religious importance to the prisoner of the Jewish dietary rules. We agree with the court below that the prison authorities are proscribed by the constitutional status of religious freedom from managing the institution in a manner which unnecessarily prevents Kahane's observance of his dietary obligations. The difficulties for the prisons inherent in this rule would seem surmountable in view of the small number of practising orthodox Jews in federal prisons (which the evidence indicated would not exceed approximately twelve),

---

4. We start with the familiar proposition that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). See also *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 3 L.Ed.2d 263 (1972). In the First Amendment context a corollary of this principle is that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.

*Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974).

5. When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights. *Johnson v. Avery*, 393 U.S. 483, 486, 89 S.Ct. 747, 749, 21 L.Ed.2d 718 (1969).

*Procunier v. Martinez, supra*, 416 U.S. at 405–06, 94 S.Ct. at 1807.

6. Because we hold that the denial of kosher food is not justified by any "important or substantial government interest," we need not decide whether restrictions on prisoners' First Amendment rights need be justified by an "important or substantial government interest" or by the more stringent demands of a "compelling government interest." This court expressly adopted the "compelling interest" formula in *Goodwin v. Oswald*, 462 F.2d 1237, 1244 (2 Cir. 1972). However, subsequent Supreme Court decisions, see *Procunier v. Martinez, supra*, use the language of an "important or substantial interest." Under that latter test, the government must presumably sustain a lesser burden in justifying restrictions on prisoners' rights. Because we hold that the denial of kosher food is unconstitutional using the standard more favorable to the government, we need not decide whether the more stringent "compelling interest" test is the one which is ultimately controlling.

and in view of the fact that state and city prisons provide kosher food, that federal institutions do so on high holidays and that medical diets are not unknown in the federal system.

■ The order under review indicates that there are several means within the reach of the respondents by which Kahane's rights may be respected. Some of these means, such as methods for self-preparation of vegetables and fruits, are suggested by respondents themselves. Provision of tinned fish, boiled eggs and cheese may be made from regular institution supplies. The language of the opinion incorporated in the order[7] may be interpreted to require hot kosher TV dinners. If these are merely suggested methods, we find no fault with them. If, however, the order requires implementation of each and every one of these methods, it would go further than necessary to reach the required result. Such details are best left to the prison's management which can provide from the food supplies available within budgetary limitations. Prison authorities have reasonable discretion in selecting the means by which prisoners' rights are effectuated. See *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Shakur v. Malcolm,* 525 F.2d 1144, 1148, n. 3 (2d Cir. 1975).

The use of frozen, prepared foods, while perhaps helpful, is not constitutionally required if another acceptable means of keeping kosher is provided. We therefore modify the order to require the provision of a diet sufficient to sustain the prisoner in good health without violating the Jewish dietary laws, without otherwise mandating specific items of diet. As so modified, the order is affirmed.

Mandate may issue forthwith.

FRIENDLY, Circuit Judge (concurring):

Judge Weinstein's initial opinion in this case, dated May 7, 1975, predicated jurisdiction on 28 U.S.C. § 2255, or, alternatively, on 28 U.S.C. § 1361, although the only named defendant was the "United States of America." Following this court's decision in *United States v. Huss,* 520 F.2d 598 (1975), which held that § 2255 was unavailable for "matters of internal prison administration," *id.* at 603–04, and that § 1361 does not lie "against unknown federal respondents," *id.* 520 F.2d at 604–05, we returned this case to the district court for reconsideration. Kahane then filed a complaint under § 1361, and a petition for a writ of habeas corpus under 28 U.S.C. § 2241, each with named respondents. Judge Weinstein treated these complaints as amendments to the original case, and dismissed them insofar as they were separate actions. In an opinion dated August 21, 1975, the district court, in light of the amended pleadings, concluding "that it accordingly has jurisdiction over the subject matter and parties and that venue in this district is proper," denied "the defendants-respondents' motion for a transfer of this cause to a judicial district wherein the plaintiff-petitioner is or will be incarcerated." As to the merits, it reaffirmed the conclusions reached in the previous opinion.

On appeal, the Government, in regard to § 1361, possibly, although I think erroneously, feeling bound by the statement in *United States v. Huss, supra,* 520 F.2d at 604, quoted in the margin,[1] contests only the venue.

---

7. The relevant portion of Judge Weinstein's order reads a follows:

    Under the precedents established by the Muslim dietary cases, at a minimum federal prisons must provide dietary alternatives to Jewish prisoners observing dietary laws that would not violate kosher requirements—for example, certain fruits, acceptable breads, cheeses, tinned fish, boiled eggs and vegeta-

bles, supplemented by hot kosher precooked frozen meals.

App. at 198–99.

1. It has been held that § 1361 affords a district court with proper venue the jurisdiction to consider a claim that actions of federal prison officials violate first amendment rights. *E.g., Barnett v. Rodgers,* 133 U.S.App.D.C. 296, 410 F.2d 995 (1969); *Long v. Parker,* 390 F.2d 816, 819 (3d Cir. 1968).

I agree that if this action was properly brought under § 1361, the district court was justified in sustaining venue on the ground of Kahane's residence in the Eastern District of New York, § 1391 (e)(4). Thus I concur in affirmance. However, for reasons set forth below, I do not believe that the action was within § 1361 and consider that the Government is free to raise this important question on another occasion if so advised.

The spectacle of the warden of a large federal prison being answerable for prison conditions under § 1361 to district judges scattered from Maine to Hawaii and Florida to Alaska—an inevitable consequence if § 1361 and the concomitant venue provision entitling a plaintiff to sue in the district of his residence are applicable—is not a heartening one. The tortuous legislative history of § 1361 has been reviewed in Byse and Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308 (1967), and by this court in *Liberation News Service v. Eastland*, 426 F.2d 1379, 1383–84 (2 Cir. 1970). Suffice it here to say that the primary purpose of Congress was to make the traditional remedy of mandamus more readily available by a broad venue provision, § 1391(e), not to expand the nature of mandamus. As I recently wrote, concurring in *Economic Opportunity Comm'n of Nassau County v. Weinberger*, 524 F.2d 393, 407 (2 Cir. 1975):

The words "in the nature of mandamus" in § 1361 do mean something, very likely what the Supreme Court had said only four years before the statute was passed, *Panama Canal Co. v. Grace Line Co., Inc.*, 356 U.S. 309, 317–18, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958). The Senate Report stated that "The purpose of the amendment is to provide specifically that the jurisdiction conferred on the district courts by the bill is limited to compelling a Government official or agency to perform a duty owed to the plaintiff or to make a decision, but not to direct or

influence the exercise of discretion of the officer or agency in the making of the decision." U.S.Code Cong. & Admin.News 2784 (87th Cong., 2d Sess. 1962).

While the distinction thus made is easier to state than to apply, there is a recognizable difference, as Mr. Justice Douglas said in *Panama Canal Co. v. Grace Line Co., Inc., supra*, 356 U.S. at 318, 78 S.Ct. at 757, between cases "[w]here the matter is peradventure clear, where the agency is clearly derelict in failing to act, where the inaction or action turns on a mistake of law," on the one hand, and, on the other, those "where the duty to act turns on matters of doubtful or highly debatable inferences from large or loose statutory terms"—here constitutional terms, and "the very construction of the statute is a distinct and profound exercise of discretion."

If the Bureau of Prisons had ruled that no attention whatever would be given to the Kosher food requirements of Orthodox Jews, that would have been such a blatant disregard of the First Amendment that § 1361 would be available to such a defendant sentenced to a federal prison term. But the Bureau had taken no such position. It had been made clear by the testimony and findings in *United States v. Huss*, 394 F.Supp. 752 (S.D.N.Y.1975), of which the district court took judicial notice and of which the parties were well aware, that the Bureau would go to considerable lengths to accommodate religious beliefs concerning diets. In the words of Bureau of Prisons Policy Statement 7300.-43A,

A committed offender may abstain from eating those food items, served to the general population, which are prohibited by the religion of the resident. The committed offender may receive added portions of non-rationed food items, from the main serving line, which in no way cause a violation of the restrictions of the faith professed by the committed offender. Ordinarily, the practical problems of institutional administration must be primary

in arranging for the observance of religious holidays, sacraments, celebrations, diets, and the like.

An even stronger commitment was given by the Government in this case. In the argument after remand, while urging "the Court to decline to entertain the suit at this juncture and to, at the very least, transfer it," the Government's attorney said:

> I represent to the Court that [the prisoner] would be provided with a nutritionally adequate diet that would be acceptable, according to his religious tenets and with sufficient vitamin, mineral supplements so his health would not be placed in jeopardy.

Thus, the sole question to be litigated in the § 1361 action was whether the Bureau had gone far enough to satisfy its obligation to make an appropriate reconciliation of Rabbi Kahane's First Amendment right to free exercise of religion "with his status as a prisoner or with the legitimate penological objectives of the corrections system," *Pell v. Procunier,* 417 U.S. 817, 822, 825–26, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). This falls in Mr. Justice Douglas' second category, not his first.

It is doubtless true that, in an effort to avoid a jurisdictional amount requirement which seems senseless in suits against federal officers, see Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law & Comtemp. Prob. 216, 220 (1948); ALI, Study of the Division of Jurisdiction between State and Federal Courts § 1311 and pp. 172–76 (1968) (original jurisdiction in all federal question cases); 1 Recommendations and Reports of the Administrative Conference of the United States 169 (1970); Friendly, Federal Jurisdiction: A General View 121–22 (1973), federal judges have sometimes indulged in a construction of § 1361 unwarranted by its words or history, as the writer did in *Cortright v. Resor,* 447 F.2d 245, 250–51 (2 Cir. 1971), *cert. denied,* 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972), where the Government did not challenge § 1361 jurisdiction. Cf. Hart & Wechsler, The Federal Courts and the Federal System 1158–60 (2d ed. 1973). Whatever may be said about such latitudinarism in other situations, there is no justification for it when habeas corpus under 28 U.S.C. § 2241 furnishes a wholly adequate remedy for federal prisoners in the best possible venue—the district in which the prisoner·is confined.[2] *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), in no way decided that habeas corpus would not lie to challenge conditions of confinement; it decided only that a state prisoner who was seeking to challenge the length of confinement could not utilize 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3), to avoid the exhaustion requirements of § 2254(b) and (c). Although Mr. Justice Stewart said only that the availability of habeas to challenge prison conditions was "arguable," 411 U.S. at 499, 93 S.Ct. 1827, the earlier cases cited by him, *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), and *Wilwording v. Swenson,* 404 U.S. 249, 251, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971), betrayed no uncertainty on

---

**2.** The appropriateness and convenience of that forum are manifest. If Rabbi Kahane ever is sent to a federal prison after the eight months of delay he has already obtained through proceedings in the sentencing court and in this court on appeal, one may safely guess that the present complaint will not be his last. When a new controversy arises, much will turn on the facts and the warden and other prison officials should not have to go to Brooklyn, or allow Rabbi Kahane to go there, in order to testify. The special consideration existing in *Braden v. 30th Judicial Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), would

not be at all applicable in such a case. On the other side, if allowing Rabbi Kahane the privileges here decreed should cause disturbances on the part of other prisoners, as the Bureau of Prisons predicts, there ought to be an opportunity for the warden to seek speedy modification from a federal court near the prison; habeas corpus under § 2241 affords this whereas application of §§ 1361 and 1391(e) might require a warden in, for example, Atlanta, Ga., to seek modification of an order made by a district court in Alaska or Hawaii in a § 1361 action if the prisoner had obtained an order there on the basis of his residence.

the point. See also Developments in the Law—Federal Habeas Corpus, 84 Harv. L.Rev. 1038, 1083–84 (1970). The very inaptness of the venue provisions of § 1391(e) and the availability of § 2241 argue powerfully that Congress did not intend § 1361 to be utilized to challenge prison administration.

It is true, as we said in *United States v. Huss,* see footnote 1, that several circuit court decisions have held § 1361 to be an appropriate basis of jurisdiction for considering claims challenging the legality of prison conditions. However, most of these cases were brought in the district of confinement, with the warden of the prison named as a defendant. *Walker v. Blackwell,* 360 F.2d 66 (5 Cir. 1966); *Toles v. Katzenbach,* 385 F.2d 107 (9 Cir. 1967), *vacated,* 392 U.S. 662, 88 S.Ct. 2292, 20 L.Ed.2d 1353 (1968); *Long v. Parker,* 390 F.2d 816 (3 Cir. 1968); *Barnett v. Rodgers,* 133 U.S.App.D.C. 296, 410 F.2d 995 (D.C.Cir. 1969); *Taylor v. Blackwell,* 418 F.2d 199 (5 Cir. 1969); *Mead v. Parker,* 464 F.2d 1108 (9 Cir. 1972); *Workman v. Mitchell,* 502 F.2d 1201 (9 Cir. 1974); see also *Waddell v. Alldredge,* 480 F.2d 1078 (3 Cir. 1973). Since federal jurisdiction and venue would exist under § 2241, the approach I am suggesting would yield an identical result; indeed, several of these cases explicitly recognized that habeas corpus relief was also available—e. g., *Mead v. Parker, supra.*[3]

As far as I have been able to ascertain, only two circuits have assumed jurisdiction over a prisoner's grievance over the conditions of confinement under § 1361 when § 2241 would not also have been available. With respect to the decision of a divided panel utilizing the Fifth

Circuit's summary calendar procedure, *Ellingburg v. Connett,* 457 F.2d 240 (1972), I find Judge Coleman's dissent, 457 F.2d at 242, much more persuasive than the majority opinion. The decisions of the District of Columbia Circuit, *Young v. Director, U. S. Bureau of Prisons,* 125 U.S.App.D.C. 105, 367 F.2d 331 (1966); *Wren v. Carlson,* 506 F.2d 131 (1974); *Starnes v. McGuire,* 512 F.2d 918 (1974), seem quite instructive as to the mischief that can be caused by basing jurisdiction on § 1361. Even in petitions not directed, at least in form, against the prisoner's immediate warden, the circuit has found it necessary to attempt to curb the enthusiasm of district judges by ruling that "absent extraordinary circumstances which we need not today delineate, such actions should ordinarily be transferred [to the district of confinement under 28 U.S.C. § 1404(a)] as a matter of course." *Young v. Director, supra,* 367 F.2d at 332. Enforcing that rule, and filling out the term "extraordinary circumstances," required the court of appeals to develop a complicated list of rules to govern the disposition of what is normally considered a matter for the trial court's discretion. See *Starnes v. McGuire, supra,* 512 F.2d at 929–33. Included in that list is the consideration that, for cases which "should properly be brought" under § 2241, the district court "must be free to transfer the case" since "we believe that there is no reason in these cases for the court to deviate from the traditional rule that the residence of the immediate custodian (and thus the place of confinement) is the correct forum." 512 F.2d at 931–32.[4] How much more satisfactory it would be to rule that, except in extraordinary circum-

---

3. Insofar as the decisions which have advocated a broad reach for § 1361 have been based on the assumption that habeas corpus relief was unavailable to prisoners challenging the conditions of their confinement—see *Long v. Parker, supra;* Byse & Fiocca, *supra,* at 349–50; cf. *Ashe v. McNamara,* 355 F.2d 277 (1 Cir. 1965)—their force is vitiated by the invalidity of the assumption.

4. The Government has not argued on this appeal that the denial of its transfer motion was an abuse of discretion—much less the "clearcut abuse of discretion" necessary under our decision in *A. Olinick & Sons v. Dempster Brothers, Inc.,* 365 F.2d 439, 445 (2 Cir. 1966), to render such a denial appealable if it stood alone.

stances, § 1361 is not available and § 2241 is the exclusive remedy![5]

I find further support for my view in the interrelation of § 2241 and § 2255. Section 2255, added to the Judicial Code in 1948, was enacted largely to cure problems of venue arising under the general habeas corpus statute: the inordinate case load in districts where federal prisons were located, and, more particularly, the unavailability in the district of confinement of witnesses who had testimony relevant to the legality of the sentence. As was said in *United States v. Hayman,* 342 U.S. 205, 220–21, 72 S.Ct. 263, 273, 96 L.Ed. 232 (1952), "[t]he very purpose of Section 2255 is to hold any required hearing in the sentencing court because of the inconvenience of transporting court officials and other necessary witnesses to the district of confinement." Since a prisoner who brings a § 2255 action must claim "the right to be released," it is clear that the section is not available to a prisoner attacking only the conditions of his confinement, as we held in *United States v. Huss, supra;* see also *Mead v. Parker, supra,* 464 F.2d at 1111. With § 2255 relief thus "inadequate or ineffective," a prisoner attacking the conditions of confinement may bring his claim under § 2241, in the district where he is confined—a forum as convenient for airing such claims as the sentencing district is for passing on claims of illegality. This rational decision of Congress with respect to the venue of federal prisoner applications is imperiled if a prisoner can invoke § 1361 in the district of his residence to review discretionary determinations of the warden or the Bureau of Prisons.

---

**5.** The availability of transfer under 28 U.S.C. § 1404(a) is no answer, in view of the frequent reluctance of district judges to grant this and the limited availability of appellate review, see note 4 *supra,* not to speak of the time required.